UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY BETH TOBIN,                        )
                           Plaintiff,   )
                                        )       No. 1:14-cv-187
-v-                                     )
                                        )       Honorable Paul L. Maloney
HARTFORD LIFE AND ACCIDENT              )
INSURANCE COMPANY,                      )
                           Defendant.   )
_____)

## OPINION AND ORDER REVERSING THE DENIAL OF DISABILITY BENEFITS

Plaintiff Mary Beth Tobin challenges, under the Employee Retirement Income Security Act (ERISA), the denial of her application for long-term disability benefits.  As provided by the Case Management Order (ECF No. 7; ECF No. 10), Tobin first filed her brief (ECF No. 13), Defendant Hartford Life then filed its response (ECF No. 15), and Tobin filed a reply (ECF No. 19).[1]  Oral argument is scheduled for March 27, 2017.  The Court has reviewed the briefs, the administrative record (ECF No. 8), and relevant law and concludes that the matter will be decided without a hearing.

I.

Mary Beth Tobin worked in Florida for Disney Worldwide Services as manager of costuming operations.  (ECF No. 8-4 PageID.586 and PageID.589.)  Tobin's last day of work was October 2, 2012.  While in Florida, Tobin was under the care of Dr. Dacelin St. Martin.

---

[1] The Case Management Order states that the parties should cite to the Administrative Record using the PageID numbers, which are automatically generated and assigned to each page by the CM/ECF system when a document is added to the Court's electronic docket.  (ECF No. 7 pageID.40.)  Plaintiff followed this instruction, Defendant did not.

Soon after she stopped working, Tobin moved to Michigan, where she was under the care of Dr. Troy Thompson, who is board certified in family medicine. (ECF No. 8-2 Thompson Dep. at 6 PageID.210.) On her disability claim form, Tobin stated she had been under a doctor's care since February 2012 for fibromyalgia and hypertension. (ECF No. 8-4 PageID.580.) Along with her claim form, Tobin submitted an Attending Physician's Statement of Functionality, which was completed by Dr. Thompson. (ECF No. 8-4 PageID.576-77.) Hartford later summarized Dr. Thompson's functional assessment as limiting Tobin to the following:

> capable of sitting for 30-60 minutes at a time for up to 3-4 hrs per day; stand for 5-15 minutes at a time for a total of 45 minutes per day; walk only a few feet at a time for a total of 30 minutes per day and carry 1 lb occasionally; reach at desk/waist level frequently, never reach above shoulders and never finger/handle.

(ECF No. 8-1 "Initial Denial" PageID.104-05.).

Tobin's file was sent to two doctors for independent reviews. (ECF No. 8-4 PageID.571-72.) Dr. Scott Benson, a board certified psychiatrist, reviewed the file for the purpose of offering an opinion about Tobin's psychiatric health. (ECF No. 8-4 PageID.560-63.) Dr. Michael Farber, board certified in internal medicine, reviewed the file for the purpose of offering an opinion about Tobin's physical abilities. (ECF No. 8-4 PageID.564-70.) As part of the claim review, Tobin's supervisor completed a Physical Demands Analysis (PDA), which summarized the physical requirements of Tobin's position. (ECF No. 8-4 PageID.586-87.) Hartford later described the requirements as follows:

> you must be able to sit for 6 hrs per day, stand for 2 hrs per day, walk for 1 hr per day, frequently reach at waist/desk level, occasionally stoop, reach above shoulders, drive, reach below waist and finger/handle/feel.

(Initial Denial PageID.104.)

Hartford denied Tobin's claim in a letter dated April 12, 2013. (Initial Denial PageID.102-07.) Hartford noted that Tobin sought disability benefits for hypertension, fibromyalgia, and depression. (*Id.* PageID.104.) Hartford noted that Dr. Benson found no psychiatric conditions that would warrant limitations or restriction on Tobin. Hartford also noted that Dr. Farber found insufficient medical data to support limitations on Tobin's physical abilities. Hartford concluded that Tobin should be able to perform the essential functions of her job as manager of costume operations. (*Id.* PageID.106.)

Tobin appealed the initial denial of her claim. As part of her appeal, Tobin submitted her medical records from Dr. St. Martin and Dr. Thompson. Dr. Thompson was deposed in September 2013. (ECF NO. 8-2 PageID.205-57.) Dr. Thompson completed a form used for diagnosing fibromyalgia. (ECF No. 8-2 PageID.270-72.) Tobin submitted a Vocational Opinion authored by Mark Pinti, a vocational and rehabilitation consultant. (ECF No. 8-1 PagerID.182-86.) Tobin also submitted an information sheet on fibromyalgia which was published by the American College of Rheumatolgy. (ECF No. 8-1 PageID.172-76.)

Tobin's file was sent to three doctors for independent reviews. Her file was reviewed by Dr. Lawrence Farago, who is board certified in psychiatry (ECF No. 8-1 PageID.132-35); Dr. Charles Brock, who is board certified in neurology (ECF No. 8-1 PageID.136-43); and Dr. Dayton Payne, who is board certified in internal medicine and rheumatology (ECF No. 8-1 PageID.144-147). Tobin's filed was also reviewed by Roger McNeeley, a vocational rehabilitation consultant. (ECF No. 8-1 PageID.124-30.)

Hartford denied Tobin's appeal in a letter dated November 18, 2013. (ECF No. 8-1 "Final Denial" PageID.91-97.) Hartford concluded that the medical record did not support the conclusion that Tobin had a significant psychological condition, nor did the record support the conclusion that Tobin had functional deficits resulting from a psychological condition. Hartford also concluded that Tobin's self-reported complaints were not supported by measureable evidence from a neurological or rheumatological perspective. Hartford noted that the reviewers did not find any substantial functional deficits.

Hartford addressed Pinti's vocational assessment. Hartford reasoned that Pinti largely relied on Dr. Thompson's conclusions. Hartford acknowledged that if Dr. Thompson's conclusions were medically supported, then it would agree with Pinti's conclusions. Hartford, however, disagreed with Dr. Thompson's conclusions, again asserting that the medical record did not support a finding that Tobin had a psychiatric condition or psychological functional deficit. Similarly, the medical record did not support a finding that Tobin had functional limitations that would prevent her from working in a sedentary capacity. Hartford also disputed Pinti's assessment of the physical demands of Tobin's job.

Tobin then filed her complaint here seeking judicial review of Hartford's decision.

## II.

Federal courts review ERISA benefits decisions under either the de novo standard or the arbitrary and capricious standard. If an ERISA benefits plan give the administrator discretion to interpret the terms of the plan or to make benefit determinations, this Court reviews the administrator's decisions under the arbitrary and capricious standard. *Price v.*

*Bd. of Trustees of the Indiana Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (citations omitted).  "The arbitrary and capricious standard is 'the least demanding form of judicial review of administrative action.'" *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011) (citation omitted).  The arbitrary and capricious standard extends to this Court's review of the plan administrator's interpretations of the plan itself, *Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009), as well as the plan administrator's factual determinations, *see Gatlin v. Nat'l Healthcare Corp.*, 16 F. App'x 283, 288 (6th Cir. 2001).  Under this standard of review, a court must uphold the plan administrator's decision "if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence." *Glenn v. Metlife*, 461 F.3d 660, 666 (6th Cir. 2006) (citation omitted).  "Put another way, 'when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Pflaum v. UNUM Provident Corp.*, 175 F. App'x 7, 9 (6th Cir. 2006) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)).  Under the arbitrary and capricious standard, courts may consider whether the plan administrator had a conflict of interest, which arises when the plan administrator makes the benefits decision and is responsible for paying for the benefits.  *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005).

The Court reviews Hartford's decision under the arbitrary and capricious standard. The Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."  (ECF No. 8-4

PageID.695.)  This language confers discretionary authority with Hartford.[2]  The parties also agree that the Hartford's decision must be reviewed under the arbitrary and capricious standard.  (Def. Br. at 16 PageID.781; Pl. Reply at 1 PageID.855.)

III.

A.  Your Occupation

Tobin argues Hartford's description of her job duties provide a basis for reversing the decision.  Tobin insists her job duties included substantially more activity than what Hartford attributed to her position.

The Policy or Plan defined when a covered individual becomes disabled.  Disabled or disability means the employee was prevented from performing "one or more of the Essential Duties of:" "Your Occupation."   (ECF No. 8-4 PageID.685.)   And, "Your Occupation" means the occupation "as it is recognized in the general workplace.  Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location."  (*Id.* PageID.688.)

In the Final Denial, Hartford concluded that Tobin's job, as performed in the general workplace, was largely sedentary.  Hartford relied on the Dictionary of Occupational Titles' (DOT) description of Manager, Department (DOT 189.167-022).  (PageID.96.)  Hartford rejected Pinti's use of the DOT description for Manager, Theater, reasoning that Tobin's

---

[2] Tobin was living in and working in Florida when she was covered by the Plan.  Although Michigan regulations voids discretionary clauses in insurance policies, Michigan Administrative Code Rule 500.2202(b), that provision does not apply here.  Tobin moved to Michigan after she alleges she became disabled.

job duties "were at a much higher management/executive level[.]" (*Id.*)  Hartford found that department manager description was consistent with the PDA completed by her supervisor.

Where the administrator has full discretion to determine eligibility for benefits and discretion to interpret the terms and provisions of the policy, the administrator's use of the DOT to determine the duties of an occupation is reviewed under the arbitrary and capricious standard.  *Osborne v. Hartford Life and Accident Ins. Co.*, 465 F.3d 296, 299 (6th Cir. 2006).  In *Osborne*, the court noted that the dispute was not over the meaning of the phrase "own occupation," but over the methodology for determining the plaintiff's occupation.  *Id.* at 300.  Subsequent to *Osborne*, an in an unpublished opinion, the Sixth Circuit held that an administrator's use of the DOT to determine how an occupation is performed in the national economy must be consistent with the quality and quantity of evidence in the record. *Gilchrest v. Unum Life Ins. Co. of America*, 255 F.App'x 38, 42 (6th Cir. 2007.)   In *Gilchrest*, the court noted that the record contained evidence that the plaintiff was not performing the job duties that were defined by his employer's job description and, therefore, Unum's use of a similar job description from the DOT was arbitrary and capricious.  *Id.* at 42-43.

Hartford's use of the DOT description for the duties of a department manager was not arbitrary and capricious.  Tobin provided a detailed description of how she performed her job. (ECF No. 181.)  Tobin explained that she managed, organized, supervised, and had responsibility for all costuming and cosmetology for several Disney parks.  She had four area managers and seventeen frontline managers, in addition to the 225-250 hourly workers that she supervised.  (*Id.*)  She traveled between the Disney parks on a daily basis, which required

both driving and walking.  The Plan, however, explicitly stated that how Tobin performed her job would not be used as the standard for "Your Occupation."  Hartford's use of the DOT, rather than Tobin's description of her job, was not arbitrary.  And, Hartford did not ignore evidence in the record that contradicted the duties outlined by the DOT.  Tobin stated that when she was too tired or in too much pain, she would have the necessary meetings by conference call.  (*Id.*)  With the exception of travel, the DOT summary of the duties of a department manager are consistent with Tobin's summary of her own job performance.

### B.  Fibromyalgia

Tobin argues Hartford's standard for resolving fibromyalgia-related disability claim is inconsistent with the nature of fibromyalgia.  In its response brief, Hartford states it does "not disagree with Plaintiff's diagnosis of fibromyalgia."  (Def. Br. at 24 PageID.789.) Hartford asserts that the record does not contain sufficient evidence of disability due to Tobin's condition and symptoms.  (*Id.*)

As the claimant for ERISA benefits, Tobin bears the burden of present sufficient evidence to show she is entitled to benefits.  *See Rose v. Hartford Fin. Servs. Group, Inc.*, 268 F.App'x 444, 452 (6th Cir. 2008) (citation omitted).  The Plan identifies what Tobin must prove.  She must establish that is "prevented from performing one or more of the Essential Duties of:" "Your Occupation."  (PageID.685.)  The Plan does not provide any qualification or limitation on the type of evidence the claimant must provide.

The Sixth Circuit has provided some guidance for disability claims involving fibromyalgia.  "Fibromyalgia is characterized by 'chronic and frequently difficult to manage

pain in muscles and soft tissues surrounding joints.'" *Rose*, 268 F.App'x at 446 n.4 (citation omitted). The court has commented that fibromyalgia, unlike other illnesses, cannot be confirmed or diagnosed by objective medical tests; it is diagnosed "by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988). The Sixth Circuit has noted that "the process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (citing *Preston*, 854 F.2d at 820.) Although fibromyalgia may defy diagnosis by objective medical testing, an insurer may request objective evidence of a claimant's functional capacity. *Rose*, 268 F.App'x at 453 (quoting *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 166 (6th Cir. 2007)). So, even though a claimant might not be able to provide objective medical evidence to support a fibromyalgia diagnosis, the claimant could be asked to provide objective evidence of a disability arising from the diagnosis, such as a functional capacity evaluation. *Huffaker v. Metro. Life Ins. Co.*, 271 F.App'x 493, 500 (6th Cir. 2008); *see Hunt v. Metro. Life Ins. Co.*, 587 F.App'x 860, 862 (6th Cir. 2014).

### 1.  Initial Denial of Benefits

Applying these principles to the Initial Denial of Tobin's request for disability benefits reveals problems with Hartford's analysis of Tobin's medical records. Contrary to what Hartford argues in its brief, Tobin's benefits, at least initially, were denied because the

reviewers found a lack of objective evidence of a medical condition, not a lack of evidence of limitations on her functional capacity.

The Initial Denial of benefits was based on a lack of objective evidence of the Tobin's fibromyalgia diagnosis. The lack of evidence to support her subjective complaints of pain due to fibromyalgia led Dr. Farber to conclude that her medical record did not contain objective evidence to support limitations on her physical abilities. In the summary portion of Dr. Farber's report, he focused on the lack of objective medical evidence of *disease*:

-"claimant had multiple non-specific complaints (...) associated with little objective physical examination or diagnostic study findings to support evidence of any complicated disease of severity to completely limit or restrict ability to function."

-"notes documented musculoskeletal examination with no tenderness or palpitation and there was no objective physical findings of muscular atrophy, abnormality in muscular tone, reflex abnormality, joint deformity or swelling, ROM limitation, or signs of active synovitis."

-"there was no objective data to support diagnosis of any neurological, rheumatological, or systematic inflammatory disease."

(PageID.566.) When asked to comment on Tobin's "maximum functional capabilities," Dr. Farber mentions only Tobin's weight and blood pressure; he does not account for the possibility that Tobin suffered from fibromyalgia. (PageID.568-69.) However, when asked to comment on the "expected prognosis for this condition," Dr. Farber states that "diagnosis of fibromyalgia subjective complaints are frequently out of proportion with the degree of objective data provided for review. As a result, it is difficult to objectively determine the expected prognosis." (*Id.* PageID.569.) Dr. Farber then again focused on Tobin's weight and blood pressure. (*Id.*)

The last two sections of Dr. Farber's report shows how he connected Tobin's subjective complaints of pain to the lack of objective evidence relating to her functional abilities.  Dr. Farber noted there was "some documentation of the subjective complaints," but found there was "insufficient objective physical examination or diagnostic study data to support pain and weakness of severity enough to completely limit or restrict ability to function."  (PageID.569.)  He concluded that Tobin "may have some degree of pain and weakness associated with a diagnosis of fibromyalgia ... however there was insufficient data to support severity to suggest inability to perform full-time functional activity...." (PageID.570.)  In the final comment, Dr. Farber most clearly connects the lack of evidence to support the fibromyalgia diagnosis to his conclusion that there was no objective evidence to support limitations on Tobin's ability to function.

> In this case, diagnosis of fibromyalgia is not clearly defined outside of subjective complaints of diffuse pain however pain, weakness, and subjective dysfunction may overlap with other more clearly defined and potentially treatable diagnosis as discussed in detail within summary section and question #4 of this report.

(PageID.570.)

Hartford's Initial Denial of benefits, to the extent it relied on Dr. Farber's review, suffered several errors.  First, Dr. Farber discounted Dr. Thompson's diagnosis of fibromyalgia because there was no objective evidence to support the diagnosis.  Dr. Farber's conclusion thus ignores the difficulty in diagnosing fibromyalgia.  *See Green v. Prudential Ins. Co. of America*, 383 F.Supp.2d 980, 997 (M.D. Tenn. 2005) ("In this case, where treating physicians and specialists have diagnosed fibromyalgia, and the medical research indicates that there are a lack of objective tests to prove this condition, it is unreasonable to

require objective findings.") (citing *Preston*, 854 F.2d at 819).  Second, Dr. Farber largely discounts Dr. Thompson's documentation of Tobin's subjective complaints of pain.  In doing so, Dr. Farber necessarily makes credibility findings, without ever having met or examined the patient.  *See Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 395-96 (6th Cir. 2009) ("As this court has repeatedly found, however, where an administrator exercises its discretion to conduct a file review, credibility determinations made without the benefit of a physical examination support a conclusion that the decision was arbitrary.") (collecting cases).

Third, Dr. Farber states that there was no "trigger point examination" within the material provided for review (PageID.566) and there was no "detailed trigger point analysis" (PageID.569).  However, Dr. Farber also states that he did receive, from Dr. Thompson, "a copy of an assessment of subjective complaints after our phone conversation[.]" (PageID.565.)   Dr. Thompson filled out on the form titled "American College of Rheumatology preliminary diagnostic criteria for fibromyalgia and measurement of symptom severity."  (ECF No. 8-4 PageID.555-56.)  Dr. Thompson initially assessed Tobin with 9 of 19 on the widespread pain index (WPI) and 11 of 12 on the symptom severity index.  Dr. Thompson wrote Dr. Farber a note on the form where Dr. Thompson reassessed Tobin with 11 of 19 WPI.  (PageID.556.)  Dr. Farber's failure to account for, or even mention, the assessment in his report supports the conclusion that the Initial Denial of benefits was arbitrary.

Finally, Dr. Farber does not mention or discuss Dr. Thompson's Attending Physician's Statement of Functionality.  (PageID.576-77.)  Based on Dr. Farber's report, it is

not clear that he received the Statement of Functionality, which was completed on January 28, 2013. Dr. Farber does not mention any document with a date later than January 25. The lack of discussion of the Statement of Functionality by Dr. Farber supports the conclusion that the Initial Denial of benefits was arbitrary.

### 2. Final Denial of Benefits

Applying the guidance from the Sixth Circuit to Hartford's Final Denial of benefits reveals similar problems with the file reviews of Tobin's medical records.

Dr. Brock opined that Tobin would be capable of working full time in a sedentary capacity. (PageID.140.) Dr. Brock stated that Tobin's claim for disability benefits "indicated that she had fibromyalgia that presented without objective findings." (PageID.136.) Dr. Brock concluded Tobin could move as much as ten pounds occasionally, could sit for up to eight hours a day, and could stand and walk occasionally. (PageID.141.) According to Dr. Brock, Tobin's medical records showed that she had "normal strength, normal sensation, normal gait, and was indicated as not having any tenderness on musculoskeletal examination." (*Id.*) Dr. Brock noted that Tobin did not have a "formal functional capacity evaluation during the timeframe reference." (*Id.*) Dr. Brock concluded that, from a neurological/pain perspective, "the available medical records do not indicate objective functional abnormalities on documented physical examination in support of restrictions/limitations beyond that described." (*Id.*) Without comment, Dr. Brock acknowledged that Dr. Thompson had completed an Attending Physician's Statement of Functionality.

Dr. Payne concluded that Tobin would capable of unrestricted work.  (PageID.145.) He found "no evidence of any limitations in standing, walking, bending, lifting, carrying, reaching, or using the upper extremities in all planes of motion." (*Id.*)  Dr. Payne states he conducted a "thorough review" of the medical record and acknowledges "[t]here is mention of fibromyalgia, hypertension, and back pain." (PageID.146.)  Nevertheless, the laboratory testing "revealed multiple rheumatological tests that are all completely normal." (*Id.*)  Dr. Payne "noted the tenderness and tender points" but found no evidence of "weakness, atrophy, and no features of joint damage, deformity, or destruction." (*Id.*)

Hartford's Final Denial of benefits, to the extent it relied on the file reviews of Drs. Brock and Payne, suffered several errors.  First, neither doctor considers or addresses the effect of fibromyalgia on Tobin's functional capabilities.  Both doctors acknowledge that Tobin was diagnosed with and treated for fibromyalgia, but neither attempts to assess her capabilities in light of that diagnosis.  Second, both doctors misstate important evidence in Tobin's medical history.  Dr. Brock states that her record shows no tenderness on musculoskeletal examination.  However, Tobin's medical history contains a tender point analysis performed by Dr. Thompson on September 18, 2013.[3]  (ECF No. 8-2 PageID.272.) Dr. Thompson identified 16 of 18 tender points.  Dr. Brock also states that the Attending Physician Statement of Functionality allows Tobin to lift up to 10 pounds.  Dr. Thompson did use the one pound to ten pound range, but he circled the number one and, on the right

---

[3] Dr. Payne makes multiple references to exams with normal results, other than tender points. (PageID.144 and 146.)

side of the page, hand wrote "1 lb maximum."[4]  (PageID.577.)  Finally, Dr. Payne states that "[t]here is no evidence of any limitations" on Tobin's ability to stand, walk, bend, lift, carry or reach.   But Dr. Thompson completed the Attending Physician's Statement of Functionality, which would be evidence of his assessment of Tobin's functional abilities.[5]  Dr. Thompson found that Tobin had limited abilities to sit stand, walk, bend, carry, and lift.

Third, Hartford cannot use the file reviews as a basis for concluding that Tobin's fibromyalgia does not prevent her from performing one or more of the essential duties of her job.  Recall that fibromyalgia is diagnosed by testing for tenderness in focal points and also by eliminating or ruling out other possible conditions.  Drs. Payne and Brock concluded, from the perspective of their areas of specialization, that tests in Tobin's medical history show normal results.  But, in fibromyalgia cases, the purpose of performing those tests is to rule out other potential diagnoses, like neurological and rheumatological problems.  Tobin's results should not have been surprising.  The Sixth Circuit has "recognized on more than one occasion, however, that fibromyalgia patients generally 'present no objectively alarming signs.'"  *Kalmbach v. Comm'r of Soc. Sec.*, 409 F.App'x 852, 861 (6th Cir. 2011) (citations omitted); *see Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 883 (N.D. Ohio 2003) (observing that, in typical fibromyalgia cases, the patient presents "normal physical and neurological findings.").

---

[4] This one-pound lifting restriction was recognized by Hartford in its Initial Denial.  (PageID.104-05.)

[5] In his report, Dr. Brock summarized the limitations identified by Dr. Thompson, albeit incorrectly.

By relying on the doctors' conclusions, Hartford engages in the logical fallacy sometimes called the red herring.  The fallacy occurs when the proponent introduces a new issue, usually one the proponent is prepared to address, in an attempt to distract or avoid the subject or topic of discussion.  Tobin claimed disability from fibromyalgia.  By pointing to a lack of evidence to support a different cause of disability, Hartford distracts from or avoids addressing the question of whether Tobin is disabled by fibromyalgia.  For example, when Dr. Payne concluded that Tobin's file contains no objective evidence to support an impairment related to any rheumatological processes, he does not address whether Tobin has functional impairments from her fibromyalgia.  Critically, neither Dr. Payne nor Dr. Brock explained why someone with fibromyalgia would be expected to present evidence of neurological or rheumatological impairments.  Without that necessary connection, that a person with fibromyalgia would be expected to have some evidence of neurological or rheumatological impairments, the opinions of Drs. Payne and Brock provide no useful information for Hartford for its decision.[6]

---

[6] The undersigned is, of course, not a doctor.  The point made here is that the opinions secured by Hartford do not make the necessary medical connections between the diagnosis and the evidence, or lack thereof, in Tobin's record.  To be clear, the Court does not discount the possibility that fibromyalgia patients should have some evidence of neurological or rheumatological problems.  It may well be that the correlation between fibromyalgia and neurological problems or rheumatological problems are so well accepted that the doctors found no need to make that connection.  On the other hand, the Court cannot discount the possibility that fibromyalgia patients typically do not exhibit problems that might appear on objective tests, a finding "recognized on more than one occasion" by the Sixth Circuit.  *See Kalmbach*, 409 F.App'x at 861.  And, if the latter is true, then the ultimate opinions about Tobin's functionality offered by Drs. Brock and Payne provide no support at all for Hartford's decision.  By analogy, if the patient filed a disability complaint for loss of eye sight, and the insurer sent the file for a review by a podiatrist, his or her opinion that the medical record contained no objective evidence of a disability from a podiatric perspective would not assist the insurer in assessing the disability claim.

Fourth, Hartford cannot now rely on the lack of objective medical evidence of a disability due to fibromyalgia as a reason for affirming its decision.  Because the Plan does not specify objective evidence of a disability as required proof, the Sixth Circuit has explained that the claimant must be notified of the need for objective evidence in order for the insurer to use that criterion is used to deny benefits.  *See Huffaker*, 271 F.App'x at 493; *Haning v. Hartford Life and Accident Ins. Co.*, 140 F.Supp.3d 654, 666 (S.D. Ohio 2015); *Zenadocchio v. BAE Sys. Unfunded Welfare Benefit Plan*, 936 F.Supp.2d 868, 887 (S.D. Ohio 2013); *Patrick v. Hartford Life and Accident Ins. Co.*, 543 F.Supp.2d 770, 778 (W.D. Mich. 2008).  Tobin has submitted evidence of her inability to perform one or more essential functions of her job.  Dr. Thompson's Attending Physician's Statement of Functionality provides proof that Tobin cannot perform even the sedentary aspects of her position as manager of costuming operations.  The Initial Denial of benefits did not place Tobin on notice that she needed to provide objective medical evidence of her functional capacity. Hartford never asked to conduct its own assessment of Tobin's functional capabilities. Hartford's reliance on the lack of objective evidence of limited functionality, either in the Final Denial or in its response brief, constitutes a post hoc interpretation of the terms of the Plan.  *See Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 630 (6th Cir. 2007).

Fifth, Hartford has not offered a reasonable explanation for disregarding Dr. Thompson's Attending Physician's Statement of Functionality in its Final Denial of benefits. As discussed above, Hartford relied on Dr. Farber's assessment of Tobin's functional capacity in its Initial Denial of benefits.  Dr. Farber's report made no mention of Dr. Thompson's assessment.  And Hartford then relied on Dr. Payne's assessment of Tobin's

functionality in the Final Denial of benefits.  But Dr. Payne misstated Dr. Thompson's assessment.  Dr. Thompson examined and treated Tobin.  Dr. Thompson testified that the time he spent with Tobin was important in making his assessment of her functionality. (Thompson Dep. PageID.227-28.)  None of the file reviewers met with or examined Tobin. Although his opinion is not entitled to any automatic deference, a plan administrator may not arbitrarily disregard reliable medical evidence, including the opinions of treating physicians.  *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).  In light of the concerns expressed above with the file reviews, Hartford's disregard for Dr. Thompson's assessment was arbitrary.   Finally, Hartford's rationale in its response brief, that Dr. Thompson is a generalist or a family physician and the file reviewers are specialists, is a post hoc explanation that finds no support in the Final Denial of benefits.  *See Haning*, 140 F.Supp.3d at 667.

## C.  Vocational Consultants

Both Tobin and Hartford had Tobin's medical file reviewed by vocational experts. Pinti, Tobin's expert, relied extensively on Dr. Thompson's assessment.  (ECF No. 8-1 Pinti Report PageID.182-86.)   Pinti did consider Dr. Farber's and Dr. Benson's file reviews. (PageID.182.)  Pinti did not agree with the Physical Demands Analysis completed by Tobin's supervisor, and credited Tobin's description of how she performed her job.  (PageID.184.) Pinti asserted that Tobin's position was most like the DOT's description of theater manager. (PageID.183.)   Pinti concluded that the effects of fibromyalgia and depression rendered Tobin incapable of performing her job.  (PageID.186.)

McNeeley, Hartford's vocational expert, reviewed and addressed Pinti's report and conclusions.  (ECF No. 8-1 McNeeley Report PageID.124-30.)  Notably, McNeeley states that if "the assessments/opinions made by Dr. Thompson are medically supported, [he] would concur with the conclusion of Mr. Pinti."  McNeeley disagrees with Pinti's conclusion that Tobin's position was similar to that of theater manager, and proposed that the more appropriate description of Tobin's position was that of department manager.  (PageID.129-30.)  Even with this conclusion, that Tobin's own occupation was similar to that of department manager from the Dictionary of Occupational Titles, McNeeley concluded that Tobin would be incapable of performing her own occupation if Dr. Thompson's assessment was supported.  (PageID.130.)  Although Hartford does not explicitly mention McNeeley's report in its Final Denial, close to five full pages of the Final Denial are almost word-for-word the substance of McNeeley's report.[7]  (*Compare* ECF No. 8-1 PageID.93-97 with ECF No. 8-1 PageID.124-30.)

Consistent with the discussion above of the various file reviews and the Final Denial, the Court finds McNeeley's report consistent with granting, rather than denying, disability benefits.  In reaching their conclusions, the various file reviewers failed to consider some of the evidence submitted by Dr. Thompson, or misstated the opinions of Dr. Thompson. None of the file reviewers commented on the effects of fibromyalgia on Tobin's functional abilities, which was precisely the basis for Dr. Thompson's opinion.

---

[7] On the second page of McNeeley's report (PageID.125), Dr. Thompson's name is spelled "Thomason."  That same misspelling appears on the third page of the Final Denial (PageID.94).

IV.

Hartford's denial of Tobin's claim for disability benefits was arbitrary and capricious. The doctors who performed the file reviews misstated important evidence in Tobin's medical file. The doctors did not address the effects of fibromyalgia on Tobin's functional abilities. Because the doctors failed to explain why the lack of evidence of neurological or rheumatological impairments were inconsistent with the conclusion that fibromyalgia rendered Tobin disabled, their opinions cannot be used by Hartford to made conclusions about the effect of fibromyalgia on Tobin's functional abilities. And, because Hartford did not request objective evidence on her functional capacities as part of the claims process, Hartford cannot now rely on that omission as a reason to affirm the denial of benefits.

Finally, Hartford has not provided any reasonable explanation for disregarding Dr. Thompson's assessment of Tobin's functionality. Dr. Thompson's Attending Physician's Statement of Functionality is the only evidence in Tobin's medical record assessing her physical capabilities. Applying that assessment to the PDA completed by Tobin's supervisor, Tobin is unable to perform one or more duties of her position. She must be able to sit for six hours, and she can only sit for 3 to 4 hours; she must be able to stand for two hours, and she can only stand for 45 minutes; she must be able to walk for one hour, and she can only walk for 30 minutes; she must occasionally be able to reach above her shoulder and also finger/handle, and she cannot do either. (*Compare* PDA PageID.104 *with* Physician's Statement PageID.577.)

Because the Court has found in favor of Tobin on her lack of functional abilities, the Court need not resolve the issue of whether the depression resulting from fibromyalgia also qualified her for disability benefits.

## <u>ORDER</u>

For the reasons provided in the accompanying Opinion, Hartford Life and Accident Insurance Company's decision denying Mary Beth Tobin's claim for long term disability benefits is **REVERSED.  IT IS SO ORDERED.**

Date:  February 8, 2017                                    /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge